UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

BARBARA A. HOWARD,

    Plaintiff,

    v.                                                       Case No. 09-C-0391

SAINT THOMAS MORE HIGH SCHOOL,

    Defendant.

---

DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. # 10), AND DISMISSING CASE

Plaintiff, Barbara A. Howard, claims that St. Thomas More High School (Thomas More) terminated her employment as Development Director because of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., specifically, 29 U.S.C. § 623. (See Compl. ¶ 22.) However, Howard has run into a major obstacle: she signed a release waiving "any and all rights" to bring an employment related claim against Thomas More. Because the court finds that the release is valid and the execution was knowing and voluntary, defendant's motion for summary judgment will be granted and this case dismissed.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at

323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a genuine issue of material fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

This case involves a release signed by Howard waiving her rights to bring an ADEA claim. Employers are allowed to seek such waivers from their employees, and the waivers are enforceable if they comply with the Older Worker Benefits Protection Act, an amendment to the ADEA that is codified at 29 U.S.C. § 626(f)." *Blackwell v. Cole Taylor Bank*, 152 F.3d 666, 669 (7th Cir. 1998). Section 626(f)(1) allows an employee to waive ADEA claims if the waiver is knowing and voluntary. Section 626(f)(1) sets forth specific requirements that must be met for a "knowing and voluntary" waiver:

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under this Act;

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F) (I) the individual is given a period of at least 21 days within which to consider the agreement; or
 (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to--
 (I) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and
 (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

In satisfying these elements, section 626(f)(3) places the burden of proof on the employer to show that the waiver was knowing and voluntary. If the employee claims that the waiver was not "knowing and voluntary" the court must apply the "totality of the circumstances test" to circumstances surrounding the execution of the release. *Pierce v. Atchison, Topeka, and Santa Fe Ry. Co.*, 65 F.3d 562, 571 (7th Cir. 1995). The *Pierce* court said that a court should consider a number of factors to assess the waiver's validity, including, but not limited to:

> (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Id.*

FINDINGS OF FACT

The following findings of fact are relevant and undisputed for purposes of summary judgment.[1] Thomas More, a co-educational and college prepatory high school in Milwaukee, began experiencing difficult times by the early 2000s because student enrollment had dropped and financial challenges had mounted. (Pauly Aff. ¶ 3; Arend Decl. ¶¶ 1, 5-6.) Howard interviewed for the position of Director of Development at Thomas More

---

[1]Although defendant filed supplemental proposed findings of fact on September 22, 2009, the supplemental findings do not comply with L. R. 56.2(c) inasmuch as they are not specific responses to plaintiff's proposed findings of fact.

in April of 2003, and was hired in June at a salary of $45,000 plus benefits. (*Id.* ¶ 12; Pauly Aff. ¶ 5.) According to the job description in the record, Howard reported to the President and supervised the Development Office Staff, Recruitment Director, and the Marketing Director. (Howard Decl., Exs. 2, 6.)

According to the resumé and employment references submitted in support of Howard's application for employment, she has an AA in marketing from Gateway Technical College in Elkhorn and credits toward a B.A. from Carroll College (now Carroll University) in Waukesha. (*Id.* ¶ 7.) Howard has previously worked in settings that required her to analyze data, to conduct research and to prepare various kinds of documents, including grant proposals. (Id. ¶ 8.) In addition, she was a School Board member for five years. (*Id.* ¶ 9.) Howard's resumé states that she has "extensive decision-making experience with a strong ability to analyze problems," "proficient communication skills with strong emphasis on problem solving, negotiation, and relationship building," and the ability to "locate and utilize available resources creatively and energetically." (*Id.* ¶¶ 10, 11.)

In April of 2006, Howard learned, through conversation with Jeff Korpal, Alumni Association Chair and former Board Chair, that then-President Steve Roy was fired for unknown reasons. (Howard Decl. ¶¶ 84-85.) The following month, Robert Pauly ("Pauly"), a tenured faculty member, was announced as the Interim President effective July 1, 2006. (*Id.* ¶ 16.) Later, in November of 2007, after a Midwest search and from among fifteen candidates, the Board of Directors selected Pauly to be the President of Thomas More, a role in which he remains today. (Pauly Aff. ¶ 15.)

On being selected as president, Pauly had to confront the school's economic realities. (Arend Decl. ¶¶ 1, 4, 6-11, 17-18.) Pauly requested that Howard meet with him

5

on November 6, 2006. (*Id.* ¶ 68.) On November 14, 2006, Pauly told Howard that her employment would be terminated effective November 30, 2006. (Pauly Aff. ¶ 27.)

Pauly and Board of Directors Chair James Podewils provided Howard with a document entitled "Settlement Agreement and Release" ("Agreement"). (Pauly Aff. ¶ 28.) The Agreement provided consideration in the form of twelve weeks pay beginning December 1, 2006, and partially school-paid health insurance for three months. (*Id.* ¶ 29.) In return, under the Agreement, Howard expressly agreed to waive "any and all rights" to bring an employment-related claim against Thomas More under the Age Discrimination in Employment Act of 1967, as amended. *(Id.* ¶ 30.) She further agreed that she "will receive consideration beyond that which she was already entitled to, before entering into this Agreement." (Id. ¶ 31.) In addition, the Agreement states,

> 9. Each party agrees and represents that prior to the execution of this Agreement they were fully advised to seek legal counsel to discuss all aspects of this Agreement, and that to the extent desired, each party has availed itself of that right. Ms. Howard further represents that she has been given adequate time to seek such legal advice and agrees that she has read and carefully and fully understands all the provisions in this Agreement and that she has knowingly and voluntarily entered into this Agreement.

(*Id.* ¶ 32.)

The Agreement contained a clause providing twenty-one days within which "to consider whether to accept and execute" the Agreement and seven days after signature within which to revoke acceptance. (*Id.* ¶ 33.) In the final paragraph, the Agreement states:

> 13. Ms. Howard acknowledges having read the foregoing Agreement in its entirety and represents that she comprehends its contents and makes this Agreement

> knowingly and voluntarily. Ms. Howard further acknowledges that the settlement is adequate consideration for her release of claims as set forth in paragraph 2.

(*Id.* ¶ 34.)

Howard took the Agreement with her at the close of the meeting. (*Id.* ¶ 35.) After the meeting, Jeff Korpal, Alumni Association Chair and former Board Chair at Thomas More, contacted Howard. (Howard Decl. ¶ 84.) On November 29, 2006, Howard signed, dated and submitted the Agreement to Pauly. (Pauly Aff. ¶ 36; Howard Decl. ¶ 90.)

Howard did not revoke her acceptance of the Agreement within the following seven days. (Pauly Aff. ¶ 37.) She accepted and retained all of the payments set forth in the Agreement. (*Id.* ¶ 38.) After November 30, 2006, Howard did not perform any additional work for Thomas More. (*Id.* ¶ 39.)

On August 27, 2007, Howard filed a Discrimination Complaint with the State of Wisconsin, Equal Rights Division ("ERD"), alleging age discrimination against Thomas More, in violation of the Wisconsin Fair Employment Act, § § 111.31-111.395 Wis. Stats., ERD Case No. CR200703139. (Pepelnjak Aff. ¶ 2.) Pursuant to a work-sharing agreement between the Equal Employment Opportunity Commission ("EEOC"), Howard's claim was cross-filed with the EEOC, Charge No. 26G200701912C. (*Id.* ¶ 7.) On April 14, 2009, Howard filed the complaint in the instant action. (Pepelnjak Aff. ¶ 11.) Thomas More answered on May 15, 2009. (*Id*. ¶ 12.)

## CONCLUSIONS OF LAW

Initially, the court must examine the statutory factors set forth in 29 U.S.C. § 626(f) to determine whether the waiver that Howard executed on November 29, 2006, was

"knowing and voluntary."  With the exception of paragraph (H), which does not apply because defendant used the Agreement as an exit incentive only with Howard and not with a group or class of employees, the stipulated facts show that all of the relevant factors are met.

The third paragraph of the three page Agreement addresses Howard's rights under the ADEA. (Ex. 7, ¶ 2.)  It states that "Ms. Howard expressly acknowledges and agrees that by entering into this Agreement she is waiving any and all rights or claims she may have arising under the ADEA of 1967, as amended . . . ."  (Id.)  Moreover, the Agreement lists multiple conceivable claims that could arise and indicates that they are prohibited by the signing of the Agreement.  (Id.)  It states unambiguously that "Ms. Howard agrees to waive any rights that she may have to file any such claim in the future, against the school . . . except a claim for enforcement of this Agreement."  (Id.)

The Agreement also contains a clear explanation of the consideration that Howard will receive for signing the Agreement.  (Ex. 7, ¶ 7.)  Prior to executing the Agreement, Howard was not entitled to 12 weeks of pay or payment by the school for its portion of her health insurance premium.  Although Howard did not continue to provide services to Thomas More after November 30, 2006, she received pay and benefits from Thomas More for an additional 12 weeks.  Therefore, Thomas More provided Howard with consideration she was not already entitled to receive.

The Agreement further states:

Each party agrees and represents that prior to the execution of this Agreement they were fully advised to seek legal counsel to discuss all aspects of this Agreement, and that to the extent desired, each party has availed itself of that right.  Ms. Howard

> further represents that she has been given adequate time to seek such legal advice . . . ."

(Ex. 7, ¶ 9.) This clause notes that Howard was entitled to seek legal counsel if she desired and that she was given the opportunity to do so. Moreover, the last paragraph above Howard's signature states that "Ms. Howard acknowledges having read the foregoing agreement in its entirety and represents that she comprehends its contents and makes this agreement knowingly and voluntarily." (Id. ¶ 13.) Therefore, Howard received advice to seek legal counsel.

Howard had the Agreement from November 14, 2006 until she signed it on November 29, 2006. Moreover, in paragraph twelve (12), the Agreement states that "Ms. Howard shall have 21 days to consider whether to accept and execute this agreement . . . ." In paragraph twelve (12), the Agreement also states that "if [Howard] accepts this Agreement she has seven days after acceptance to revoke acceptance if she so wishes. The Agreement will not become effective until the seven-day period has passed." Howard, who did not revoke her acceptance within the following seven days, had sufficient time to consider the Agreement.

After examining the statutory factors in 29 U.S.C. § 626(f), the court considers the totality of the circumstances surrounding the execution of the waiver if the plaintiff challenges that the Agreement was knowing and voluntary. *Pierce,*, 65 F.3d at 571. Howard submits that her education and prior business experience do not imply that she was able to read or to understand legally binding agreements. The court agrees that these facts cannot be considered alone in determining Howard's ability to understand the legal ramifications of executing the Agreement. Hence, it is significant that Howard has a

college-level education and years of business experience. Moreover, there is no evidence that Howard made any attempt to negotiate or change the Agreement.

The Agreement at issue is clear and unambiguous. Less than three pages long, it identifies the parties to the Agreement, the rights that Howard is waiving, the consideration that each party is receiving, Howard's ability to seek legal counsel, and the time line for proceeding with enforcement of the accord. Furthermore, the final paragraph of the Agreement acknowledges that Howard read the agreement and understands its provisions. She received the Agreement on November 14, 2006 and returned the signed copy on November 29, 2006. Therefore, she had the Agreement in her possession for over two weeks and under its terms had additional time to consider it.

Howard concedes that she read the Agreement and thought of contacting an attorney. That being said, she did not retain counsel and asserts that Thomas More, through Korpal, dissuaded her from seeking legal advice regarding the Agreement. In support of her claim, Howard cites her declaration at paragraphs 84 to 90, which state,

> 84. Upon my return, Jeff Korpal, Alumni Association Chair and former Board Chair contacted me. He informed me that he was aware of the waiver and that he had read the letter presented to me on November 6th. At first, I was surprised by this[] but then figured that only an "involved" person would have had this information shared with him. I viewed him as a representative of Thomas More.
>
> 85. Mr. Korpal shared with me that Steve Roy, former President, had also been fired and had been given a similar waiver. He told me that Steve had considered hiring an attorney[] but changed his mind and signed the waiver. It was clear to me that Mr. Korpal was representing the views of Thomas More. It was also clear to me that Mr. Korpal was strongly discouraging me from contacting an attorney to review the situation.

86. Furthermore, Mr. Korpal specifically told me that if I thought it, I too would see that not hiring an attorney, but signing the waiver and moving on, would be the best thing for me to do.

87. [Korpal] contacted me on several occasions between the time of my receiving the waiver and my leaving on November 30th. See, e.g., Ex. 32, a true and accurate copy of an email from Mr. Korpal. Although cordial, it was clear to me that Mr. Korpal's communications were meant to (and did) persuade me not to contact an attorney about my situation.

88. Later, when reviewing my personnel file, I found that Mr. Korpal had made negative comments about me to Mr. Pauly. Attached as Ex. 30 is a true and accurate list of comments created by Mr. Pauly. The comments are inconsistent with other documents, for example, a letter of Mr. Korpal's stationary. Attached as Ex. 31 is a true and accurate copy of such a letter from Mr. Korpal.

89. I wanted to believe that Thomas More was entering into the waiver in good faith. I believed that Bob Pauly and Thomas More's leadership would abide by the terms of the waiver. I had no idea that Paul Neuberger had already been contacted regarding my position and had spent over an hour in Bob Pauly's office in late September. See, Griswold Affidavit.

90. I signed the waiver on November 29th, believing that I needed to give the signed document to [Pauly] before I left on November 30th. I did not contact an attorney because Thomas More, through Mr. Korpal, discouraged me from doing so.

Howard maintains that she "viewed" Korpal as a representative of Thomas More. However, nothing in this record establishes that Korpal was, in fact, an agent of Thomas More. According to Howard, Korpal was the Alumni Association Chair and the *former* Board Chair. Korpal, who was no longer a member of the Board of Directors, had no decision making authority or actual authority to act on behalf of Thomas More.

Nevertheless, under the doctrine of apparent authority, "a principal may be held liable for the acts of one who reasonably appears to a third person, through acts by

the principal or acts by the agent if the principal had knowledge of those acts and acquiesced in them, to be authorized to act as an agent for the principal." *Lamoreux v. Oreck*, 275 Wis.2d 801, 829-30 (Ct. App. 2004). Even taking the facts in the light most favorable to Howard, as the court must at this stage of the proceedings, there is no evidence that Thomas More acted to justify belief by Howard that Korpal was its agent, or that Thomas More had knowledge that Korpal was communicating with Howard, or that Korpal represented to Howard that he was speaking to her on behalf of Thomas More. Apparent authority cannot be established solely by the acts and conduct of Korpal. *Amplicon, Inc. v. Marshfield Clinic*, 786 F. Supp. 1469, 1476 (W.D. Wis.1992) (quoting *Sater v. Cities Service Oil Co.*, 235 Wis. 32, 40 (1940)).

Moreover, Howard's choice of language in the declaration is telling. She "viewed" Korpal as a representative, and it was "clear" to her that Korpal was expressing the views of Thomas More. Yet Howard cites no authority in support of a finding that her beliefs and speculations alone permit an inference that Thomas More acted improperly. Also, any statement by Korpal that it would be in Howard's best interest to sign the waiver and move on is insufficient to create a genuine issue of material fact when, as a matter of law, the totality of the circumstances establish that Howard made a fully informed decision. Finally, the record is devoid of evidence that Korpal was Thomas More's agent, that Korpal was cloaked with apparent authority, or that anyone with authority to act on behalf of Thomas More induced Howard to execute the Agreement by improper conduct. Consequently, the court finds that Howard knowingly and voluntarily waived her right to proceed on her claims in this action and Howard cannot proceed on her discrimination claims.

Now, therefore,

IT IS ORDERED that defendant's motion for summary judgment (Doc. # 10) is granted.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 6th day of October, 2010.

>BY THE COURT
>
>/s/ C. N. Clevert, Jr.
>C. N. CLEVERT, JR.
>CHIEF U. S. DISTRICT JUDGE